J-A19035-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MAX KANEVSKY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| REVOLUTION ICE RINK, LLC., BLACK | : | No. 3001 EDA 2019 |
| BEAR SPORTS GROUP, INC., AND | : | |
| SCOTT F. DEROSA | : | |

Appeal from the Order Entered October 3, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): No. 190607507

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:               **FILED SEPTEMBER 14, 2020**

Max Kanevsky (Appellant) appeals from the order entered in the Philadelphia County Court of Common Pleas sustaining the preliminary objections to venue filed by Revolution Ice Rink, LLC (Revolution), Black Bear Sports Group, Inc. (Black Bear), and Scott F. DeRosa (collectively, Appellees).[1]  Appellant argues the trial court erred in transferring venue to Bucks County because he satisfied the quantity and quality test established by Pa.R.C.P. 2179(a)(2).[2]  For the reasons below, we affirm.

---

[1] Appellees are represented by the same counsel and have filed a joint brief on appeal.

[2] *See* Pa.R.C.P. 2179(a)(2) (personal action against a corporation or similar entity may be brought in a county where it regularly conducts business).

Black Bear owns and operates ice hockey rinks both in and outside the Commonwealth, and has its principal place of business in Chevy Chase, Maryland. Trial Ct. Op., 1/21/20, at 1-2; Appellees' Answers & Objections to Venue Interrogatories, 9/4/19, at 7. Revolution, which is a wholly-owned subsidiary of Black Bear, owns and operates a single ice hockey rink, owns a youth elite hockey team which plays its home games there, and has its principal place of business in Warminster, Pennsylvania. Trial Ct. Op. at 1, 5; Appellees' Answers & Objections to Venue Interrogatories at 7. The recreational hockey rink owned and operated by Revolution, the Revolution Ice Gardens (the Rink), is located in Warminster, Bucks County. Trial Ct. Op. at 1-2; Appellees' Answers & Objections to Venue Interrogatories at 7. As stated by the trial court, "[o]n May 2, 2019, Appellant suffered a compound leg fracture while playing recreational ice hockey at the [Rink] in Warminster, Bucks County." *Id.*

Appellant filed a civil action against Appellees in Philadelphia County on June 28, 2019, alleging a single count: that the negligence of Appellees resulted in his injuries. Appellant's Complaint, 6/27/19, at 6. Appellees filed joint preliminary objections to venue on July 19, 2019, arguing that none of them could be properly served in Philadelphia County because none were domiciled or conducted any business there. Appellees' Preliminary Objection to Improper Venue, 8/1/19, at 1.

The trial court conducted an evidentiary hearing on October 3, 2019. At the hearing, Appellant argued that venue was proper in Philadelphia County, citing a press release, published by Business Wire on March 5, 2019, written by Black Bear's CEO Murry Gunty and provided by Black Bear Vice President Ryan Scott. *See* N.T. Deposition of Ryan Scott, 10/1/19, at 16-18. The press release stated that the Rink is "the hockey hub of North Philadelphia." *Id.* at 16. Appellant contended this statement indicated Appellees were "using Philadelphia to generate revenue, and that's something that could be used in [proper venue] analysis." N.T. Venue Hearing, 10/3/19, at 5-6. Further, Appellant averred Appellees failed to meet their burden to provide evidence of their lack of business activities in Philadelphia, as Black Bear Vice President Scott could not provide data on the number of Philadelphia residents that are customers of the Rink. *See id.* at 7-8.

Appellees responded that CEO Gunty's comments were advertising, that advertising did not create proper venue in Philadelphia County, and further that the Rink did not keep a record of the residences of its customers, and thus it was not possible to provide the data sought by Appellant. *See* N.T. Venue Hearing at 8-9. Appellees asserted that they have not owned any corporate entities or properties, nor maintained any storefronts to sell tickets, within Philadelphia. *See id.* at 9. Further, Appellees cited their Answers and Objections to Plaintiff's Venue Interrogatories, which stated that neither Black Bear nor Revolution generated revenue in or paid taxes to Philadelphia. *Id.*

at 9; *see* Appellees' Answers & Objections to Venue Interrogatories at 3-4, 6. On the same day, the court entered the underlying order sustaining Appellees' preliminary objections to improper venue and transferred this matter to the Court of Common Pleas of Bucks County. Trial Ct. Op. at 3.

Appellant filed a timely notice of appeal on October 10, 2019, and timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal.

Appellant raises one issue on appeal:

> Did the [trial] court abuse its discretion by entering an order sustaining Preliminary Objections and transferring venue from Philadelphia County to Bucks County when [Appellant] satisfied the quality and quantity analysis on venue in Philadelphia pursuant to Pa.R.C.P. 2179(a)(2), and further, when [Appellee Black Bear]'s CEO actually admitted to substantial Philadelphia business activities, and further when the burden of proof in establishing improper venue rests with the party challenging venue?

Appellant's Brief at 4.

Appellant argues the trial court abused its discretion in transferring venue to Bucks County, when Appellees Black Bear and Revolution regularly conduct business in Philadelphia County. Appellant's Brief at 18, 21. Specifically, Appellant avers that the trial court failed to conduct a proper quantity and quality analysis of the contacts Appellees have in Philadelphia, as required in *Purcell v. Bryn Mawr Hospital*, 579 A.2d 1282 (Pa. 1990). *See Purcell*, 579 A.2d at 1285 (business contacts with a county, in which venue is sought, must be judged on the basis of their "quality" and "quantity").

- 4 -

Appellant contends the court did not properly consider the following circumstances: (1) Black Bear's payment for, and ownership of, a youth ice hockey team that includes "Philadelphia" in its name was a business act essential to furthering its corporate objectives; (2) CEO Gunty's press release provided a basis for venue; and (3) the Rink's proximity to Philadelphia was necessary to its continued existence. *See id.* at 21, 22, 24, 27. We disagree.

We note the relevant standard of review:

A trial court's ruling on venue will not be disturbed if the decision is reasonable in light of the facts. A decision to transfer venue will not be reversed unless the trial court abused its discretion. A plaintiff's choice of forum is given great weight, and the burden is on the party challenging that choice to show it is improper.

However, if there exists **any proper basis** for the trial court's decision to grant the petition to transfer venue, the decision must stand.

*Schultz v. MMI Prods.*, 30 A.3d 1224, 1228 (Pa. Super. 2011) (citation omitted).

Pennsylvania Rule of Civil Procedure 1006(e) states that improper venue must be raised by preliminary objection. Pa.R.C.P. 1006(e). Rule of Civil Procedure 2179(a) governs where an action against a business organization may be brought:

(1) the county where its registered office or principal place of business is located;

(2) a county where it regularly conducts business;

(3) the county where the cause of action arose;

(4) a county where a transaction or occurrence took place out of which the cause of action arose, or

(5) a county where the property or a part of the property which is the subject matter of the action is located provided that equitable relief is sought with respect to the property.

Pa.R.C.P. 2179(a)(1)-(5).

With respect to Subsection (a)(2), the Pennsylvania Supreme Court noted in **Purcell** that:

"Our State acts, however, as to both domestic and foreign corporations, require 'doing business' in the county where suit is brought before jurisdiction can be acquired." . . . [B]usiness contacts must be judged on the basis of their "quality" and "quantity." . . . "Quality of acts" means "those directly, furthering, or essential to, corporate objects; they do not include incidental acts." Quantity means those acts which are "so continuous and sufficient to be general or habitual." . . . [T]he acts of the corporation must be distinguished: those in "aid of a main purpose" are collateral and incidental, while "those necessary to its existence" are "direct."

**Purcell**, 579 A.2d at 1285 (citations omitted). Further, the **Purcell** Court stated, "Mere solicitation of business in a particular county does not amount to conducting business." **Id.** at 1287.

Here, the trial court concluded neither Black Bear's nor Revolution's activities satisfied the quantity and quality standards of **Purcell**. Trial Ct. Op. at 4. The court found no evidence in the record to indicate that either Appellee conducted any activity necessary to advance their corporate objectives in Philadelphia County. The court noted Appellant's own complaint averred:

[Black Bear] has its principal place of business in Chevy Chase, Maryland, [Revolution] has its principal place of business in

> Warminster, [Bucks County,] Pennsylvania, and . . . DeRosa is a resident of Bucks County, Pennsylvania.

Trial Ct. Op. at 1. The court further reasoned:

> [T]he evidence shows the Philadelphia Revolution youth elite hockey team is based out of the [Rink] in Warminster, Bucks County. Without evidence of record showing the Philadelphia Revolution youth elite hockey team regularly conducts business in [Philadelphia C]ounty, the Philadelphia Revolution youth elite team is no different than any other organization that has Philadelphia in its name but conducts its business outside of Philadelphia County. ***See e.g.*** Harrah's Philadelphia Casino & Racetrack (located in Chester, Delaware County . . . ), Philadelphia Union major league soccer team (located in Chester), the Philadelphia Premium Outlets (located in Limerick, Montgomery County . . .), and [the] Philadelphia International Airport (located in Tinicum Township, Delaware County). . . .

> \* \* \*

> [The Rink] is physically located in Warminster, Bucks County. [Appellant] asks this Court to jettison this uncontroverted fact and find venue proper in Philadelphia because the CEO of [Black Bear] issued a press release, i.e. an advertisement, in which he refers to the [Rink] as "the hockey hub of North Philadelphia." Calling an ice rink in Warminster "the hockey hub of North Philadelphia" does not *ipso facto* make venue proper in Philadelphia. The CEO's statement was nothing more than an advertising technique[ ] in which the speaker embellishes a fact to make a product appear more attractive. . . .

Trial Ct. Op. at 5-6.

We add that Appellees' answers and objections to venue interrogatories averred, and they again argued at the October 3, 2019, venue hearing that in the last five years, neither Black Bear nor Revolution owned, purchased, or sold any property in Philadelphia. Appellees' Answers & Objections to Venue Interrogatories at 1-2, 3-4; N.T. Venue Hearing at 9. In addition, Appellees stated that neither Black Bear nor Revolution paid any taxes or generated any

revenue in Philadelphia. Appellees' Answers & Objections to Venue Interrogatories at 4, 6.

We note Appellant argues that the circumstances of this case are similar to the facts of *Purcell*. In *Purcell*:

> Bryn Mawr Hospital . . . is located in Montgomery County, and the Purcells ([plaintiffs]) reside in Chester County. In 1985, the Purcells brought suit in Philadelphia County charging Bryn Mawr and the doctors and nurse . . . with negligence in the death of their infant daughter. Bryn Mawr filed preliminary objections to venue in Philadelphia County.

*Purcell*, 579 A.2d at 1283. The trial court found Bryn Mawr Hospital had sufficient contacts with Philadelphia, on the basis that Bryn Mawr had contractual affiliations with residency programs in Philadelphia, purchased goods and services from businesses in Philadelphia to further its business in Montgomery County, and maintained and paid for continuous advertisements in Philadelphia. *Id.* at 1283-84.

However, on appeal, our Supreme Court concluded that venue was improper in Philadelphia County. *Purcell*, 579 A.2d at 1287. The *Purcell* Court found that the business conducted by Bryn Mawr in Philadelphia was in furtherance of its objectives in Montgomery County, and stated, "Our conclusion would be different if, for example, Bryn Mawr established a branch clinic in Philadelphia where paying customers would be diagnosed or treated on the premises in Philadelphia, just as there can be no question that Bryn Mawr does business in Montgomery County." *Id.* Similar to the circumstances in *Purcell*, venue might be proper in Philadelphia if Appellees owned and

- 8 -

operated property in Philadelphia as they do in Warminster, Bucks County. We conclude the trial court correctly applied the ***Purcell*** analysis and did not abuse its discretion. Appellant is therefore not entitled to relief.

The trial court found **no evidence** of business activity by Appellees in Philadelphia, and found the March 5, 2019, press release, containing CEO Gunty's comments, was an advertisement. ***See*** Trial Ct. Op. at 5-6. The press release, describing the Rink as a hub of hockey activity within Philadelphia, did not constitute an essential act for the existence of Black Bear or the accomplishment of its corporate objectives. Even if this press release were not an advertisement, it would be an act of Black Bear "in aid of [its] main purpose," not one necessary to its existence which would satisfy the quality of contact analysis set forth in ***Purcell***. ***See Purcell***, 579 A.2d at 1285.

We conclude the trial court did not abuse its discretion in sustaining Appellees' preliminary objections to venue and transferring this matter to the Court of Common Pleas of Bucks County. Thus, Appellant is not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/14/20